IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

NOV 13 2014

JAMES ... HATTEN, Clerk
By ... Deputy Clerk

SCJ

| | | |
|---|---|---|
| JESSE JAMES DUPREE, an individual citizen of the state of Georgia, and AMERICAN OUTLAW SPIRITS INCORPORATED, a Georgia corporation, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| Vs. | ) ) ) | FILE NO. 1 14-CV-3666 |
| J.J. SPIRITS, LLC, a California limited liability company, ALPHA KENNY 1 LLC, an Idaho limited liability company, LEVECKE CORPORATION, a California corporation, and LEVECKE, LLC, a California limited liability company, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**COMPLAINT**

COMES NOW, plaintiffs, American Outlaw Spirits Incorporated ("Plaintiff

AOS") and Jesse James Dupree ("Plaintiff Dupree"), file this Complaint against

defendants, J.J. Spirits, LLC ("JJ Spirits"), Alpha Kenny 1 LLC ("Alpha Kenny"),

LeVecke, LLC ("LeVecke, LLC"), and LeVecke Corporation ("LeVecke

Corporation"), and in support of their respective prayers for declaratory judgment

1

and injunctive relief with to respect to the their intellectual property, as prayed for herein, respectfully show this Court the following:

## Parties, Jurisdiction and Venue

1.

Plaintiff Dupree is a citizen of the state of Georgia and resides in Kennesaw, Cobb County, Georgia.

2.

Plaintiff AOS is a corporation organized and existing under the laws of the state of Georgia, and its principal place of business is located at 1480 Old 41 Highway N.W., Kennesaw, Cobb County, Georgia 30152. Plaintiff AOS is a citizen of the state of Georgia.

3.

Plaintiff Dupree is the sole shareholder of Plaintiff AOS.

4.

Plaintiffs name and join in this action as defendants all parties that have a legal interest in its outcome.

5.

JJ Spirits is a limited liability company organized and existing under the laws of the state of California, and its principal place of business is located at 10810 Inland Avenue, Mira Loma, California 91752.  Service of process in this action may

2

be made upon JJ Spirits through its agent for service of process, J. Neil LeVecke, III, at the address set forth above in this paragraph. JJ Spirits is a citizen of the state of California.

6.

Alpha Kenny is a limited liability company organized and existing under the laws of the state of Idaho, and its principal place of business is located at 160 2nd Street East, Suite 201, Ketchum, Idaho 83340. Service of process in this action may be made upon Alpha Kenny through its currently listed agent for service of process, United States Corporation Agents, Inc., 950 Bannock Street, Suite 1100, Boise, Idaho 83702. Alpha Kenny is a citizen of the state of Idaho.

7.

LeVecke LLC is a limited liability company organized and existing under the laws of the state of California, and its principal place of business is located at 10810 Inland Avenue, Mira Loma, California 91752. Service of process in this action may be made upon LeVecke LLC through its agent for service of process, J. Neil LeVecke, III, at the address set forth above in this paragraph. LeVecke LLC is a citizen of the state of California.

8.

LeVecke Corporation is a corporation organized and existing under the laws of the state of California, and its principal place of business is located at 10810

3

Inland Avenue, Mira Loma, California 91752.  Service of process in this action may be served upon LeVecke Corporation through its agent for service of process and officer, J. Neil LeVecke, III, at the address set forth above.  LeVecke Corporation is a citizen of the state of California.

9.

Plaintiff AOS seeks relief in this action under the provisions of a law of the United States.

10.

Plaintiff AOS seeks a declaration in this action as to the scope and extent of its rights as the owner and registrant of trademarks registered with the United States Patent and Trademark Office ("USPTO") under the Lanham Act (15 U.S.C. § 1051 *et seq*.).

11.

Plaintiff AOS seeks injunctive relief in this action under the provisions of the Lanham Act to protect its rights as the owner and registrant of trademarks registered with the USPTO.

12.

This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").

4

13.

This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 (The district and territorial courts of the United States shall have original jurisdiction, . . . , of all actions arising under [the Lanham Act], without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties).

14.

This Court has jurisdiction over this action under 28 U.S.C. § 1332 in that there is complete diversity of citizenship with respect to the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

15.

Under the provisions of 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff Dupree's claims for relief in this action in that they "are so related to claims in the action within [this Court's] original jurisdiction that they form part of the same case or controversy."

16.

Defendants have transacted business in the state of Georgia directly related to the subject matter of this action such that this Court has personal jurisdiction over them under Georgia's Long Arm Statute, O.C.G.A. § 9-10-91(1), and Fed. R. Civ. P. 4(k)(1)(A).

5

17.

This Court is the proper venue for this action. A substantial part of the events or omissions giving rise to the claims in this action occurred in this district, a substantial part of property that is the subject of the action is situated in this district, and Defendants have had the most significant contacts with the state of Georgia in this district.

**Allegations**

18.

Plaintiff Dupree is a native of the state of Georgia.

19.

Plaintiff Dupree is a successful songwriter, musician, performer, music executive, television producer, reality television show star, and businessman.

20.

Plaintiff Dupree is the lead singer and front man of *Jackyl*, a mainstream rock and roll band from Acworth, Georgia that has achieved popular acclaim, success and notoriety nationally and internationally.

21.

*Jackyl* has produced and released ten (10) albums under such national labels as Geffen Records, Epic Records and Mighty Loud.

6

22.

In 1992, *Jackyl's* eponymous debut album released under the Geffen Records label went platinum, selling over one million copies.

23.

*Jackyl's* second album, also released under Geffen's label, went gold selling over 500,000 copies.

24.

*Jackyl* videos appeared on MTV, the band performed at Woodstock 1994, and its music was featured on *Beavis and Butthead's Experience*, a triple platinum compilation album tied into the hit cartoon series.

25.

*Jackyl* has earned two *Guinness Book of World Records* citations and the designation "The Hardest Working Band in Rock 'N' Roll" for performing 100 shows in 50 days as well as 21 shows in 24 hours.

26.

For the past 15 years *Jackyl* has been the featured musical act at the annual motorcycle rally held at the Full Throttle Saloon in Sturgis, South Dakota. Each year, the rally draws hundreds of thousands of riders and attendees.

7

27.

For five seasons, from 2009 through 2014, Plaintiff Dupree and *Jackyl* have been part of the cast of the TruTV hit show *Full Throttle Saloon*, a reality television series featuring the South Dakota saloon during the annual Sturgis motorcycle rally.

28.

Plaintiff Dupree counts among the executive producers of *Full Throttle Saloon*, along with television industry magnate, Arnold Rifkin.

29.

Plaintiff Dupree and *Jackyl* continue to perform throughout the United States, particularly in the Midwestern states, and currently have 18 dates booked from November 2014 through April 2015.

30.

Plaintiff Dupree owns and operates Cock of The Walk Studios in Kennesaw, Georgia, the home studio of the renowned music producer, Jeff Tomei and his music production company, Rockit Productions.

31.

Jeff Tomei has produced recordings for numerous big-label, renowned musical acts including *Smashing Pumpkins, Matchbox Twenty, Jerry Cantrell, Soul Asylum, Collective Soul, Mother's Finest, Jesse James Dupree and Dixie Inc., Sixpence None The Richer*, and *Michelle Malone*.

8

32.

Plaintiff Dupree is the General Manager of Ironworks, Inc., a recording studio founded by actor Keifer Southerland, recently of the hit TV series, *24*, to provide a platform for the development and production of "indie" music.

33.

Plaintiff Dupree is one of the originators and an executive producer of the hit reality TV show *Two-A-Days*, a show aired on the cable television channel MTV. The show chronicles the Hoover, Alabama High School football team as, among other things, it competes for a fourth consecutive state championship, including the defeat of Nease High School, a team led by 2007 Heisman Trophy winner Tim Tebow.

34.

In or about 2007, Plaintiff Dupree started a business that sold an unfiltered wheat beer under the label "Jesse James America's Outlaw Beer" as a another, unique marketing business that played upon his name and likeness.

35.

Plaintiff Dupree threw himself into marketing "Jesse James America's Outlaw Beer," making it a commercial success.

9

36.

The success of "Jesse James America's Outlaw Beer" caused Plaintiff Dupree to become interested in launching a business to label and sell distilled spirits under brand "Jesse James America's Outlaw."

37.

In conversations with a distributor of "Jesse James America's Outlaw Beer," the distributor advised Plaintiff Dupree that be believed Hunter Vogel and Andrew Lerner, the two current members of Alpha Kenny, were "sitting on" a significant amount of bourbon that may be of interest to Plaintiff Dupree in his desire to enter the distilled spirits market.

38.

The distributor introduced Plaintiff Dupree to Hunter Vogel and Andrew Lerner.

39.

Plaintiff Dupree came to learn that the bourbon actually was owned by LeVecke Corporation, a well-established company that owns and operates distilled spirits plants (each known as a "DSP") that are registered and permitted by the United States Alcohol and Tobacco Tax Trade Bureau ("TTB") under the Federal Alcohol Administration Act (the "FAA Act") to distill, bottle, and distribute distilled spirits.

10

40.

LeVecke Corporation is the name under which the business operates, but upon information and belief, LeVecke, LLC is the actual legal name of the company. Hereinafter, "LeVecke" shall refer to both LeVecke Corporation and LeVecke, LLC.

41.

Hunter Vogel and Andrew Lerner introduced Plaintiff Dupree to LeVecke as a potential DSP partner with which to label and sell distilled spirits.

42.

Plaintiff Dupree and LeVecke decided to explore forming a joint venture to sell distilled spirits under the brands "America's Outlaw Whiskey" and/or "Jesse James."

43.

Hunter Vogel and Andrew Lerner sought to be included in the joint venture on their representations that they had industry contacts and expertise which would afford them the ability to contribute equally to the success of the business.

44.

On or about November 18, 2011, "LeVecke Corporation," Alpha Kenny and "America's Outlaw Spirits, LLC"[1] executed a Term Sheet which states that it

---

[1] There is no legal entity, "American Outlaw Spirits, LLC." The legal entity that owns the trademarks and brands at issue in this action Plaintiff AOS.

11

"summarizes the principal terms of the joint venture proposed to be entered into by [the parties]." A true and correct copy of the Term Sheet is attached hereto and incorporated herein as Exhibit "A."

45.

The Term Sheet states that the "Nature of Business" to be formed was:

> Sale of distilled alcoholic beverages and beverage mixers under the brands "America's Outlaw" and/or "Jesse James" (the "*Brands*"), together with apparel and other items bearing the Brands and the name of one or more distilled spirit (collectively the "*Products*").

(Italics original).

46.

The Term Sheet states that it is "*not intended to be an agreement* that is binding on any party. Rather, a binding agreement will not exist unless and until the parties have executed and delivered *definitive agreements* pertaining to the joint venture." (Emphasis supplied).

47.

The signature paragraph of the Term Sheet states that, by signing below, the parties "acknowledge their intent to proceed with the formation of the Company. However, as stated above, this *Term Sheet is not intended to be an agreement* that is binding on either [sic] party. Rather, a binding agreement *will not exist unless and until* the parties have executed and delivered *definitive documents* pertaining to the joint venture." (Emphasis supplied).

12

48.

The parties to the Term Sheet never executed or delivered definitive documents or agreements pertaining to the joint venture.

49.

The Term Sheet states that "[a]ll of the terms relating to the management of the Company will be definitively set forth in an operating agreement for the Company (the "*Operating Agreement*")." (Italics original).

50.

The parties, however, never executed or delivered an operating agreement for JJ Spirits.

51.

The Term Sheet states that "[o]verall management of the Company and its business will be by a board of managers (the "***Board***") consisting of three individuals, one of whom will be appointed by LeVecke, one of whom will be appointed by Alpha Kenny, and one of whom will be appointed by AOS." (Italics and bold original).

52.

The parties, however, never appointed a board for JJ Spirits.

13

53.

The Term Sheet states that JJ Spirits and LeVecke "will enter into a Co-Packing Agreement under which LeVecke will produce the Company's products, provide warehousing of the Company's finished goods inventory, and provide accounts payable, accounts receivable and accounting services for the Company."

54.

JJ Spirits and LeVecke, however, never entered into a Co-Packing Agreement.

55.

The Term Sheet contemplates that American Outlaw Spirits, LLC "will grant to the Company a [sic] perpetual, worldwide, royalty-free licenses to use certain intellectual property rights, including without limitation the Brands and copyrights necessary for the merchandising, promotion and sale of the Products" and that such licenses will contain other terms set out in the Term Sheet.

56.

No such licenses, however, ever were executed or delivered granted to JJ Spirits.

57.

LeVecke formed JJ Spirits as a California limited liability company.

14

58.

Since 2011, JJ Spirits has branded, marketed and sold bourbon whiskey under the label "Jesse James America's Outlaw Bourbon Whiskey."

59.

During this time, LeVecke provided the spirits, bottling, labeling, storage and shipment of the product, the product sales force, billing collection and accounting services, and oversight of the product's distribution.

60.

During this time, Plaintiff AOS has permitted the use of the Brands and the labeling of the product as "Jesse James America's Outlaw Bourbon Whiskey."

61.

Plaintiffs actively and successfully marketed "Jesse James America's Outlaw Bourbon Whiskey."

62.

Plaintiff Dupree personally organized and managed LeVecke's sales force to conduct a highly organized and effective marketing campaign for "Jesse James America's Outlaw Bourbon Whiskey" which included not only obtaining purchase commitments from major, top-tier distributors, but also actively and consistently marketing at the retail level to ensure that the product is "pulled through" from the distributors by local sales outlets such as package stores, clubs and bars.

15

63.

Through personal appearances and bottle signings, Plaintiff Dupree has actively branded, marketed and promoted "Jesse James America's Outlaw Bourbon Whiskey."

64.

Plaintiffs and LeVecke collectively provided the assets, capabilities and efforts that made "Jesse James America's Outlaw Bourbon Whiskey" a commercial success.

65.

After JJ Spirits had been doing business for a period of time it became evident that Alpha Kenny was not capable of contributing and performing to the venture at the same level as LeVecke and Plaintiffs.

66.

LeVecke discussed with the members of Alpha Kenny that, given the relative contributions and capabilities of the parties, it would be fair and equitable if Alpha Kenny were to agree to participate in JJ Spirits at less than a 33.3% interest, the prospective interest set out in the Term Sheet.

67.

Each time he did so, Alpha Kenny expressed its desire to sell the Brand and split the profits, thus indicating that it believes JJ Spirits has an ownership interest

16

in the Brands. In addition, Alpha Kenny pledged to fight to establish that JJ Spirits has a right to the Brands.

68.

On or about a June 4, 2014, LeVecke sent Alpha Kenny a letter that, *inter alia*, delineated how "LeVecke Coporation and America's Outlaw Spirits, LLC have been providing a large majority of the working capital and resources for the JJ Spirits brand" and proposed that, in order to keep the parties' relationship "fair and equitable" and "create a fair and equitable structure going forward," Alpha Kenny agree to a15% ownership interest in JJ Spirits.

69.

In response, Alpha Kenny, through its legal counsel, threatened legal action and took the legal position that:

a. "[t]he right to sell America's Outlaw Bourbon and other spirits endorsed by Mr. Dupree is, pursuant to the express terms of the Joint Venture Agreement and your subsequent years-long course of dealing, a right owned by JJ Spirits, LLC entity [sic]"; and

b. "Alpha Kenny considers, pursuant to the terms of the 2011 Joint Venture Term Sheet, the right to sell any spirits endorsed by Mr. Dupree, including, without limitation, Jesse James, America's Outlaw Bourbon (or any substantially similar product) an asset of JJ Spirits, LLC."

17

70.

In correspondence between the lawyers for LeVecke and Alpha Kenny regarding JJ Spirits, both lawyers acknowledged that the parties never entered into an operating agreement for the JJ Spirits. Nonetheless, Alpha Kenny continues to assert the claims referenced above.

71.

As a result of a recent assessment of the parties' relative capabilities and performance, as well as the legal claims asserted by Alpha Kenny, LeVecke has elected to no longer contribute assets, capital and resources to the JJ Spirits venture at the same level it had been.

72.

The legal positions taken and claims made by Alpha Kenny are inconsistent with, and in violation of, the respective intellectual property and trademark rights of Plaintiff AOS and Plaintiff Dupree.

73.

Plaintiffs are concerned that, absent a definitive declaration of their respective rights to the intellectual property at issue in this action, such property will suffer damage in the marketplace.

18

74.

In an effort to protect their trademark rights, their intellectual property and the values of such property, Plaintiffs bring this action seeking declaratory judgments as to their intellectual property rights and associated injunctive relief.

## Count I

## Declaratory Judgment: Plaintiff AOS

75.

Plaintiff AOS incorporates herein all of the allegations set forth in paragraphs 1 through 74 of the Complaint above as if each of said paragraphs were restated herein in its entirety.

76.

Alpha Kenny's claim is inconsistent with Plaintiff AOS' trademark rights under the Lanham Act.

77.

Plaintiff AOS is the rightful owner and Lanham Act registrant of the trademarks "Jesse James America's Outlaw Bourbon Whiskey" and "Jesse James" for liquor and alcoholic beverages (the "Trademarks").

78.

Plaintiff AOS filed for, and obtained, trademark registration of Trademarks from the USPTO.

19

79.

Plaintiff AOS never entered into a binding contract with JJ Spirits by which it granted JJ Spirits the rights to the Trademarks claimed by Alpha Kenny.

80.

Plaintiff AOS has not granted JJ Spirits the rights to its Trademark, Brands and related intellectual property as claimed by Alpha Kenny.

81.

Alpha Kenny's claims to the Trademark and Brands amount to a claim that the Trademarks have been assigned to JJ Spirits.

82.

There was no written assignment of the Trademarks, as required by the Lanham Act, 15 U.S.C. § 1060, in order for there to be a valid assignment to JJ Spirits.

83.

The Term Sheet upon which Alpha Kenny bases it claims is not an enforceable contract.

84.

In the alternative, any agreement respecting the Trademarks deemed to exist between Plaintiff AOS and JJ Spirits as claimed by Alpha Kenny would, by definition, be for a perpetual term, and, as such is terminable at will.

20

85.

Under the provisions of the Lanham Act, 15 U.S.C. § 1114 no person may, without the consent of the registrant of a trademark, use in commerce any reproduction, copy, or colorable imitation of a registered trademark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."

86.

Contrary to Alpha Kenny's legal claims, JJ Spirits may not use the Trademarks without the consent of Plaintiff AOS.

87.

Subject to specific enumerated exceptions that do not apply here, 28 U.S.C. § 2201 provides that "[i]n a case of actual controversy within its jurisdiction, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

88.

There is an actual controversy as to Plaintiff AOS' rights to its Trademarks, Brands and the right to sell any spirits endorsed by Plaintiff Dupree, as contemplated under 28 U.S.C. § 2201.

89.

Plaintiff AOS is uncertain as to how it may legally proceed with respect to its use of its Trademarks and Brands, and, without a declaratory judgment, can do so only under the undue and impending threat of litigation respecting its actions.

90.

Plaintiff AOS prays that this Court issue a judgment declaring, *inter alia*, that:

a. Plaintiff AOS has not licensed JJ Spirits the Trademarks or its other intellectual property rights as claimed by Alpha Kenny;

b. Plaintiff AOS did not assign the Trademarks and Brands to JJ Spirits;

c. There was no written assignment, as required by the Lanham Act, 15 U.S.C. § 1060, in order for there to be a valid assignment of the Trademarks and Brands to JJ Spirits;

d. The Term Sheet upon which Alpha Kenny bases it claims is not a contract;

e. Plaintiff AOS and JJ Spirits did not enter a contract by which Plaintiff AOS licensed to JJ Spirits the Trademarks, Brands or other intellectual property claimed by Alpha Kenny;

22

f.  JJ Spirits may only use the Trademarks and Brands with the consent of Plaintiff AOS; and

g.  Plaintiff AOS' consent to the use of the Trademarks and Brands is terminable at will.

91.

In the alternative, Plaintiff AOS prays that this Court issue a judgment declaring, *inter alia*, that any agreement respecting the Trademarks and Brands deemed to exist between Plaintiff AOS and JJ Spirits as claimed by Alpha Kenny would, by definition, be for a perpetual term, and, as such is terminable at will.

92.

Plaintiff AOS prays that, pursuant to the provisions 28 U.S.C § 2202, this Court grant it all further necessary or proper relief based on any declaratory judgment entered under this Count.

## Count II

## Injunctive Relief: Plaintiff AOS

93.

Plaintiff AOS incorporates herein all of the allegations set forth in paragraphs 1 through 92 of the Complaint above as if each of said paragraphs were restated herein in its entirety.

23

94.

Pursuant to the Lanham Act, 15 U.S.C. § 1116(a), this Court has "the power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 43."

95.

By a writ of injunction, this Court may restrain a threatened or existing tort, or any other act of a private individual or corporation which is illegal or contrary to equity and good conscience and for which no adequate remedy is provided at law.

96.

Contrary to Alpha Kenny's legal claims, JJ Spirits may not use the Trademarks and Brands without the consent of Plaintiff AOS.

97.

By making the legal claim that JJ Spirits may use the Trademarks and Brands without the consent of Plaintiff AOS, Alpha Kenny threatens to commit a tort or other act which is illegal or contrary to equity and good conscience.

98.

Plaintiff AOS has no adequate remedy at law with respect to Alpha Kenny's threatened use Plaintiff AOS' Trademarks and Brands.

24

99.

Plaintiff AOS seeks an order from this Court enjoining JJ Spirits and Alpha Kenny from using Plaintiff AOS' Trademarks and Brands without Plaintiff AOS' consent.

100.

Plaintiff AOS seeks an order from this Court enjoining Alpha Kenny and JJ Spirits from holding out to the public directly or by implication that Alpha Kenny and/or JJ Spirits owns, legally controls, or is the licensee of the Trademarks and Brands.

## Count III
## Declaratory Judgment: Plaintiff Dupree

101.

Plaintiff Dupree incorporates herein all of the allegations set forth in paragraphs 1 through 100 of the Complaint above as if each of said paragraphs were restated herein in its entirety.

102.

Alpha Kenny has made a legal claim that JJ Spirits owns the right to sell, *inter alia*, "spirits endorsed by Mr. Dupree."

103.

Alpha Kenny has threatened to bring suit to enforce its claim.

25

104.

Plaintiff Dupree owns the right of publicity for the use of his name, likeness, publicity, and endorsements.

105.

Under Georgia law, it is a tort of violation of right of publicity for a person to use another person's name, likeness and publicity for its own financial gain absent the other party's consent.

106.

Plaintiff Dupree never consented to JJ Spirits' use Plaintiff Dupree's endorsement, name, likeness or publicity to sell distilled spirits for financial gain.

107.

There is an actual controversy as to Plaintiff Dupree's right of publicity to his name, likeness and publicity, as contemplated under 28 U.S.C. § 2201.

108.

Plaintiff Dupree is uncertain as to how he may legally proceed in further marketing spirits and related products under his name and endorsement, and, without a declaratory judgment, he can do so only under the undue and impending threat of litigation respecting his actions.

109.

Plaintiff Dupree prays that this Court issue a judgment declaring that:

a. Plaintiff Dupree owns the right of publicity in his endorsement, name, likeness and publicity for use in financial gain;

b. Plaintiff Dupree never consented to JJ Spirits having the right, let alone the exclusive right, to use Plaintiff Dupree's endorsement, name, likeness and/or publicity for financial gain; and

c. JJ Spirits does not have the right, by contract or otherwise, to use Plaintiff Dupree's endorsement, name, likeness and publicity for use in financial gain of any kind.

110.

Plaintiff Dupree prays that his Court grant it all further necessary or proper relief based on any declaratory judgment entered under this Count.

## Count IV

### Injunctive Relief:  Plaintiff Dupree

111.

Plaintiff Dupree incorporates herein all of the allegations set forth in paragraphs 1 through 110 of the Complaint above as if each of said paragraphs were restated herein in its entirety.

27

112.

Alpha Kenny is threatening to violate Plaintiff Dupree's right of publicity in his name, likeness and publicity for its own financial gain as well as the financial gain of JJ Spirits.

113.

Alpha Kenny is threatening to commit a tort or other act which is illegal or contrary to equity and good conscience.

114.

Plaintiff Dupree has no adequate remedy at law with respect to Alpha Kenny's threatened use of his name, likeness and publicity for its own financial gain and the gain of JJ Spirits.

115.

Plaintiff Dupree seeks an order from this Court enjoining Alpha Kenny, itself and/or by and through JJ Spirits, from using his name, likeness and publicity for financial gain as without Plaintiff Dupree's consent.

WHEREFORE, having shown this Court that they are entitled to the relief set out above in this action, Plaintiffs hereby respectfully pray that:

a. process and summons issue in this action, and that Defendant be served with this First Amended Complaint as provided by law;

b. this Court order a speedy hearing of this matter;

28

c. judgment be entered in favor of Plaintiff AOS under and as described in Count I this Complaint;

d. an order be entered in favor of Plaintiff AOS under and as described in Count II this Complaint;

e. judgment be entered in favor of Plaintiff Dupree under and as described in Count III this Complaint;

f. an order be entered in favor of Plaintiff Dupree under and as described in Count IV this Complaint; and

g. Plaintiff AOS and Plaintiff Dupree each are respectively awarded such other and further relief as this Court deems just and proper.

This 12th day of November, 2014.

Mark Ford
Georgia State Bar No. 268120
**Attorney for Plaintiffs**

Ford & Finnerty, LLC
1100 Peachtree Street
Suite 200
Atlanta, Georgia 30309
404.885.6667 (phone)
404.393.6782 (fax)
mford@fordandfinnerty.com

29