# Exhibit "A"

**Exhibit "A"**

November 18, 2011

# TERM SHEET

This Term Sheet summarizes the principal terms of the joint venture proposed to be entered into by LeVecke Corporation ("*LeVecke*"), Alpha Kenny 1 LLC, an Idaho limited liability company ("*Alpha Kenny*") and America's Outlaw Spirits, LLC, a Georgia limited liability company ("*AOS*"). However, this Term Sheet is not intended to be an agreement that is binding on any party. Rather, a binding agreement will not exist unless and until the parties have executed and delivered definitive documents pertaining to the joint venture.

| | |
|---|---|
| Form of Entity: | The parties will organize a California limited liability company (the "*Company*"). |
| Tentative Name: | JJ Spirits, LLC |
| Nature of Business: | Sale of distilled alcoholic beverages and beverage mixers under the brands "America's Outlaw" and/or "Jesse James" (the "*Brands*"), together with apparel and other items bearing the Brands and the name of one or more distilled spirit (collectively, the "*Products*") |
| Initial Members: | LeVecke<br>Alpha Kenny<br>AOS |
| Initial Ownership: | LeVecke — 333 Units (33.3%)<br>Alpha Kenny — 333 Units (33.3%)<br>AOS — 333 Units (33.3%) |
| Initial Capital Contributions: | LeVecke — One-half of the amount required for initial marketing and promotion expenses, regulatory approvals, label design, brand registration and other start-up costs as reflected in a budget to be agreed upon by the Members; provided, however, that such contribution will not exceed $25,000 and will be treated as a contribution to the capital of the Company. |

|  |  |
|---|---|
| Alpha Kenny | One-half of the amount required for initial marketing and promotion expenses, regulatory approvals, label design, brand registration and other start-up costs as reflected in a budget to be agreed upon by the Members, provided, however, that such contribution will not exceed $25,000 and will be treated as a contribution to the capital of the Company. |
| AOS | AOS shall never be required to make any capital contributions to the Company. |

License:   AOS will grant to the Company a perpetual, worldwide, royalty-free licenses to use certain intellectual property rights, including without limitation the Brands and copyrights necessary for the merchandising, promotion and sale of the Products. Any modifications, revisions and/or derivatives of the Brands or copyrights shall immediately vest in AOS upon creation and/or shall be assigned by the Company to AOS. AOS shall grant a perpetual, worldwide, royalty-free license to the Company to use all such modifications, revisions and/or derivatives in connection with the merchandising, promotion and sale of the Products.

The licenses granted to the Company will be exclusive with respect to the sale of the Products. Provided that Company is in material compliance with the terms of the Agreement, AOS agrees to defend Company against any claims by a third party that the Company's use of the Brands, as authorized by AOS, infringe a U.S. trademark or service mark of such third party whose first use of any of the Brands occurred prior to the date of the grant of the licenses from AOS to the Company, and will pay any damages and expenses arising therefrom. Except as stated in the immediately preceding sentence, the Company will, at its sole expense, take all steps reasonably necessary to prevent infringement by any other person or entity of the rights granted by AOS to the Company with respect to the Brands and related intellectual property rights.

The licenses granted to the Company will be subject to termination by AOS in the event of any "Egregious Breach" by the Company of the License Agreement between the Company and AOS that remains uncured or otherwise

unresolved for a period of ninety (90) days or more following written notice thereof given to the Company. For this purpose, "Egregious Breach" will mean:

(a) The Company's intentional disregard for, or chronic failure to comply with, its obligations under the material provisions of the License Agreement, which failure materially and adversely impacts the Brands or the associated goodwill;

(b) The Company's egregious misconduct (i.e., conduct that is extraordinary, outrageous, or illegal) which materially and adversely impacts the Brands or the associated goodwill, or

(c) The Company's challenge to AOS's title to or in the Brands, the validity of the Brands, or any registration thereof.

In the event any member of the Company:

(a) Engages in egregious misconduct (i.e., conduct that is extraordinary, outrageous, or illegal) which materially and adversely impacts the Brands or the associated goodwill; or

(b) Challenges AOS's title to or in the Brands, the validity of the Brands or any registration thereof,

then the interest in the Company of the member who has engaged in such conduct will automatically be converted into an "Economic Interest", as defined in Section 17001(n) of the California Beverly-Killea Limited Liability Company Act.

Allocation of Income and Losses:

To each Member in proportion to the number of Units owned by each of them.

Distributions:

Net profits available for distribution after the payment of all the Company's operating expenses and establishment of such reserves for working capital, capital expenditures and other purposes as the Board determines are necessary, will be distributed quarterly to the Members in accordance with their ownership interest in the Company based on the Units they own compared to the number of outstanding membership Units.

| | |
|---|---|
| Management: | Overall management of the Company and its business will be by a board of managers (the "***Board***") consisting of three individuals, one of whom will be appointed by LeVecke, one of whom will be appointed by Alpha Kenny, and one of whom will be appointed by AOS. |
| | All decisions affecting the look and feel of the Brands will require approval of the Board of Managers and approval of AOS. |
| | The Board must approve an annual budget for the Company, which shall include approval of the Company's operating expenses and of all vendors. The Board must approve any expenditure by the Company in excess of $1,000 that is not in the then current approved annual budget. |
| | All of the terms relating to the management of the Company will be definitively set forth in an operating agreement for the Company (the "*Operating Agreement*"). |
| Matters Requiring Unanimous Consent: | The following matters will require unanimous consent of Members: |

(a) Sale of all or substantially all of the assets of the Company.

(b) Merger or consolidation of the Company with or into any other entity.

(c) Dissolution of the Company.

(d) The issuance of additional equity interests in the Company.

(e) Any change in the principal business of the Company.

(f) Any agreement or transaction between the Company and any Member or any affiliate of any, including but not limited to agreements regarding facilities, goods and/or services provided to the Company by any Member or any affiliate of any Member.

(g) Sell, lease, encumber or otherwise dispose of the Company property, other than the sale of inventory in the

4

|  |  |
|---|---|
|  | ordinary course of business. |
|  | (h) Grant a license in connection with any of the Company's intellectual property. |
|  | (i) Incur (or modify) any Company debt, other than trade payables incurred in the ordinary course of business. |
|  | (j) Any transfer or sale of memberships Units. |
| Co-Packing Agreement: | The Company and LeVecke will enter into a Co-Packing Agreement under which LeVecke will produce the Company's products, provide warehousing of the Company's finished goods inventory, and provide accounts payable, accounts receivable and accounting services for the Company. LeVecke's sole compensation under the Co-Packing Agreement will be reimbursement by the Company of LeVecke's costs to produce the Company's products, consisting of raw materials, packaging materials, labor, manufacturing overhead and taxes. The Co-Packing Agreement will be terminable by either the Company or LeVecke with appropriate prior notice to the other party. The Co-Packing Agreement, and any modification of the Co-Packing Agreement, will require unanimous approval of the Board. |
| Other Terms: | The Operating Agreement will provide that each Member will have a right of first refusal with respect to any proposed transfer by any other Member of its interest in the Company and provide a mechanism for resolving disputes among the Members of the Company. |
|  | The Operating Agreement will also provide that the Company's assets will be maintained separately from any other persons or entities. Accordingly, all funds received from the sale of Products shall be deposited into an account maintained solely in the name of the Company. |
|  | If permissible under applicable law, the Company shall own all certificates of label approvals for labels that are for use in connection with the Products; provided, however, that any such approvals obtained for such labels prior to the date of the Company's organization shall be assigned and/or transferred to the Company, if permissible under applicable law, as soon as reasonably practicable, and the process therefor shall be initiated no later than ten (10) days from the date of the |

|  |  |
|---|---|
|  | Company's creation or the effective date of the Operating Agreement, whichever is later. |
| Other Activities by Members: | The Members recognize that they and their respective affiliates are now engaged, and will continue to be engaged, in various other activities involving the manufacture, marketing and sale of alcoholic beverages, including both distilled spirits and beer. Accordingly, the Members and their respective affiliates, may, notwithstanding the existence of the Company, engage in or possess an interest in other business ventures of any nature whatsoever, whether or not competitive with the business of the Company. |

By signing below, LeVecke, Alpha Kenny and AOS acknowledge their intent to proceed with the formation of the Company. However, as stated above, this Term Sheet is not intended to be an agreement that is binding on either party. Rather, a binding agreement will not exist unless and until the parties have executed and delivered definitive documents pertaining to the joint venture.

LEVECKE CORPORATION                     AMERICA'S OUTLAW SPIRITS, LLC

By: _____              By: _____
    J. Neil LeVecke, III, President

ALPHA KENNY 1 LLC

By: _____

|  |  |
|---|---|
|  | Company's creation or the effective date of the Operating Agreement, whichever is later. |
| **Other Activities by Members:** | The Members recognize that they and their respective affiliates are now engaged, and will continue to be engaged, in various other activities involving the manufacture, marketing and sale of alcoholic beverages, including both distilled spirits and beer. Accordingly, the Members and their respective affiliates, may, notwithstanding the existence of the Company, engage in or possess an interest in other business ventures of any nature whatsoever, whether or not competitive with the business of the Company. |

By signing below, LeVecke, Alpha Kenny and AOS acknowledge their intent to proceed with the formation of the Company. However, as stated above, this Term Sheet is not intended to be an agreement that is binding on either party. Rather, a binding agreement will not exist unless and until the parties have executed and delivered definitive documents pertaining to the joint venture.

LEVECKE CORPORATION                    AMERICA'S OUTLAW SPIRITS, LLC

By: _____            By: _____
    J. Neil LeVecke, III, President

ALPHA KENNY I LLC

By: _____

198085.12                             6                             1749.005

| | |
|---|---|
| | Company's creation or the effective date of the Operating Agreement, whichever is later. |
| Other Activities by Members: | The Members recognize that they and their respective affiliates are now engaged, and will continue to be engaged, in various other activities involving the manufacture, marketing and sale of alcoholic beverages, including both distilled spirits and beer. Accordingly, the Members and their respective affiliates, may, notwithstanding the existence of the Company, engage in or possess an interest in other business ventures of any nature whatsoever, whether or not competitive with the business of the Company. |

By signing below, LeVecke, Alpha Kenny and AOS acknowledge their intent to proceed with the formation of the Company. However, as stated above, this Term Sheet is not intended to be an agreement that is binding on either party. Rather, a binding agreement will not exist unless and until the parties have executed and delivered definitive documents pertaining to the joint venture.

LEVECKE CORPORATION                     AMERICA'S OUTLAW SPIRITS, LLC

By: _____              By: _____
    J. Neil LeVecke, III, President

ALPHA KENNY 1 LLC

By: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JESSE JAMES DUPREE, an individual citizen of the state of Georgia, and AMERICAN OUTLAW SPIRITS INCORPORATED, a Georgia corporation,<br><br>　　　　Plaintiffs,<br><br>Vs.<br><br>J.J. SPIRITS, LLC, a California limited liability company, ALPHA KENNY 1 LLC, an Idaho limited liability company, LEVECKE CORPORATION, a California corporation, and LEVECKE, LLC, a California limited liability company,<br><br>　　　　Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION<br><br>FILE NO. _____ |

STATE OF GEORGIA

COUNTY OF __Cobb__

## VERIFICATION

PERSONALLY APPEARED before the undersigned officer duly authorized to administer oaths, Jesse James Dupree, personally and in his capacity as the sole shareholder of Plaintiff American Outlaw Spirits Incorporated, who, after being duly

1

sworn, on oath deposes and states that the facts alleged in the above and foregoing *Complaint* are true and correct to the best of his knowledge and belief.

_____
JESSE JAMES DUPREE

Sworn to and subscribed before me
This 12th day of November, 2014.

_____
NOTARY PUBLIC

[Notary Seal: NISHIT B. MAVSAR, NOTARY PUBLIC, GEORGIA, COBB COUNTY, EXPIRES November 7, 2015]

2